IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

William Eastham, et al.,      :

    Plaintiffs,          :

  v.                          :   Case No. 2:12-cv-615

                                         :   JUDGE GREGORY L. FROST
Chesapeake Appalachia, LLC,      Magistrate Judge Kemp
                                         :

    Defendant.

OPINION AND ORDER

Plaintiffs in this case are lessors of oil and gas rights associated with real property located in Jefferson County, Ohio. They have sued the Defendant, Chesapeake Appalachia, LLC ("Chesapeake"), in this case to determine the legality of Defendant's attempt to extend the lease. Before the Court is Plaintiffs' Renewed Motion for Leave to File Amended Complaint (Doc. No. 34).

I. BACKGROUND

On July 11, 2012, Plaintiffs filed a class action complaint seeking declaratory judgment "to obtain a judicial determination of the construction and/or validity of certain oil and gas leases, and pursuant to Ohio Revised Code §5303.01 to quiet title to the oil and gas rights associated with their real estate." (Doc. No. 3 at ¶3.) According to the Complaint, "[i]n or about April of 2007, the Plaintiffs entered into an oil and gas lease with Great Lake Energy Partners, LLC, purporting to lease oil and gas rights to Plaintiffs' real property . . . ." (Id. at ¶8.) At some point later, "Defendant, Chesapeake Appalachia, LLC, acquired, purchased and/or was assigned all rights, title and interest to and in the oil and gas leases." (Id. at ¶11.) The initial term of the leases was for five years. Defendants argue that the language of the leases conveys an option to extend them

beyond their initial expiration date.  Plaintiffs disagree.  (Id. at ¶¶12-19.)  The original complaint sought a declaration that the leases are no longer in effect.

On July 18, 2012, Defendant answered the Complaint.  On October 22, 2012, the Court entered an order providing that "[a]ny motion to amend the pleadings or to join parties shall be filed by November 30, 2012."  The close of discovery was set for March 31, 2013, and the deadline for summary judgment motions was set for April 30, 2013.  On April 18, 2013, Plaintiffs filed a motion for leave to file amended complaint, which was denied without prejudice.  Plaintiffs refiled the motion on April 25, 2013.

In their renewed motion for leave to amend the complaint, Plaintiffs seek leave to make the following changes to their complaint: (1) to omit their allegations seeking to pursue a class action; (2) to add two defendants, Range Resources – Appalachia, LLC (formerly known as Great Lakes Energy Partners, LLC) ("Range Resources") and Henry A. McGraw; (3) to add five new counts titled as follows:  slander of title, breach of covenant of good faith and fair dealing, intentional / fraudulent misrepresentation, negligent misrepresentation, and respondeat superior; and (4) to seek monetary damages including punitive damages.

## II.  STANDARD

Generally, motions to amend pleadings are governed by Rule 15(a) of the Federal Rules of Civil Procedure.  When the court has issued a scheduling order setting a deadline for motions to amend the pleadings, however, a subsequent motion for leave to amend must first be analyzed under Rule 16(b) before determining whether the motion satisfies Rule 15(a).  Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  In considering

the interplay of Rule 15(a) and Rule 16(b), the Court of Appeals has decided that "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003) (citation omitted). "[A] court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Leary, 349 F.3d at 906 (citing Fed.R.Civ.P. 16, 1983 advisory committee's notes; and Inge v. Rock Financial Corp., 281 F.3d 613, 625 (6th Cir. 2002)). The Court of Appeals also requires courts to determine "the potential prejudice to the nonmovant" before modifying the scheduling order. Leary, 349 F.3d at 909.

### III. ANALYSIS

As an initial matter, Plaintiffs seek to amend their complaint to withdraw their class action allegations. However, the Court of Appeals has adopted "the view of the majority of the circuits that Rule 23(e) applies in a precertification context where putative class members are likely to be prejudiced." Doe v. Lexington-Fayette Urban Cnty. Gov't, 407 F.3d 755, 764 (6th Cir. 2005). Rule 23(e) provides the following:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection

>    with the proposal.
>        (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>        (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23.  In accordance with <u>Doe v. Lexington-Fayette Urban Cnty. Gov't</u>, the Court here must determine whether putative class members are likely to be prejudiced by the dismissal of the class action allegations.  That may depend on how much publicity the filing of the case has received, and whether absent class members may have relied on the filing of this case as having tolled the statute of limitations for their claim.  <u>See</u> <u>In re Behr Dayton Thermal Products, LLC Litigation</u>, No. 3:08-cv-326, 2012 WL 559913 (S.D. Ohio Feb. 21, 2012).  The parties have not addressed whether putative class members would be likely to be prejudiced if Plaintiffs withdraw their class action allegations.  Accordingly, Plaintiffs may not amend the complaint to withdraw those allegations at this time.  The Court will require further briefing on the issue of whether putative class members are likely to be prejudiced by the withdrawal of their class action allegations.

Turning to the proposed new counts, Plaintiffs first seek to add a count for "Slander of Title" and a count for "Breach of Covenant of Good Faith and Fair Dealing" against Defendant Chesapeake.  These counts both arise from allegations that Defendant Chesapeake "unilaterally executed a Notice of Extension" of the lease and recorded that extension without an agreement, and "[a]s a direct and proximate result of [that conduct] the Plaintiffs suffered a slander of their title to

4

their oil, gas, and coalbed methane impairing their ability to freely convey the same . . ." and other damages. (Doc. No. 34-1 at ¶¶38-39, 44-46.) Plaintiffs have not set forth any reason why they could not have brought these claims at the time they filed the initial complaint. Their only argument in support of adding these two claims is that they "desire to amend their Complaint in this case to affirmatively plead all legal theories on which they may recover to avoid the expected future argument that their theories were not pled in the Complaint." (Doc. No. 34-2 at 6.) That argument fails to demonstrate good cause for modifying the scheduling order to permit Plaintiffs to add these claims.

    The next two proposed new counts, "for intentional/fraudulent misrepresentations" and "for negligent misrepresentation," are directed to the proposed new defendants. Plaintiffs allege that "on or before the time the Plaintiffs entered into the Lease, Defendant, McGraw, made false representations of material facts to the Plaintiffs, and specifically stated to the Plaintiffs at the time the Lease was negotiated and entered that the Lease was for a period of five (5) years and that the Plaintiffs could renegotiate the Lease and enter into a new lease at the end of the five (5) year period." (Doc. No. 34-1 at ¶49.) Plaintiffs argue that they were unaware of the facts underlying these claims until certain information was revealed during the discovery process. (Doc. No. 34-2 at 2 & 4-5.)

    Regarding the newly revealed information, Plaintiffs allege that when they filed their initial claims, they knew about the representation made by the potential new defendants, but they did not know that it was a misrepresentation. Specifically, Plaintiffs allege that when they signed the Lease, Range Resources, through its agent Henry A. McGraw, represented to them that the term of the Lease was for five years and after that the

5

parties could renegotiate the Lease.  (Doc. No. 34-2 at 4-5.) Plaintiffs allege that at that time, and until very recently, they believed that those representations were truthful. Accordingly, they did not bring claims against Range Resources or Mr. McGraw, but merely against the successor in interest to Range Resources, Defendant Chesapeake.  Plaintiffs argue that on April 12, 2013, when Defendant produced a Declaration of Mark A. Acree, a former Vice President of Land Acquisition for Range Resources, that was when they first realized that Range Resources' intent in drafting the Lease was to permit "the lessee to extend the Lease for an additional primary term by paying the same compensation as paid for the Lease originally or to renew upon similar terms a like lease."  (Doc. 34-2 at 4; Doc. 34-3 at ¶8.)

Defendant counters that Plaintiffs knew or should have known that Range Resources' intent in drafting the Lease differed from the alleged representation of its agent Henry McGraw based on the language of the Lease.  Specifically, Defendant points to deposition transcripts in which Plaintiffs testified that McGraw's oral statements were not consistent with the language of the lease.  (Doc. No. 36 at 10-11.)  Plaintiffs counter that, in fact, Mr. McGraw's statement was "in-line with the plain and unambiguous language" of the Lease.  (Doc. No. 40 at 4.)  As a result, Plaintiffs argue that they had no knowledge of any misrepresentation until they read Mr. Acree's affidavit. In considering these competing arguments, it is important to consider the elements of the claims at issue.

A claim of negligent misrepresentation under Ohio law is defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the

> information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC, 700 F.3d 829, 839-40 (6th Cir. 2012) (quoting Delman v. City of Cleveland Heights, 41 Ohio St.3d 1, 534 N.E.2d 835, 838 (1989) (emphasis omitted) (internal quotations and citations omitted)). The elements of a claim of fraudulent misrepresentation (which are the same as for a claim of intentional misrepresentation in Ohio) are the following:

> "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.

Stuckey v. Online Res. Corp., 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (Ohio 1998)); see also Scotts Co. v. Cent. Garden & Pet Co., 403 F.3d 781, 789 (6th Cir. 2005) (quoting Williams, 83 Ohio St.3d at 475).  Both of these claims require justifiable reliance on the information or representation.

Under Ohio law, when a written contract is "the final and complete statement of the parties' agreement-when, that is, it is a complete integration-the parol evidence rule prohibits the parties from introducing extrinsic evidence of the terms of their agreement." Watkins & Son Pet Supplies v. Iams Co., 254 F.3d 607, 612 (6th Cir. 2001).  The Court of Appeals explained that the parol evidence rule is not actually an evidentiary rule but rather a rule of substantive contract law that "does not operate to prohibit proof of terms of the agreement; instead, it provides

that parol terms are not terms of the agreement at all." Id. at 612 (citing Galmish v. Cicchini, 90 Ohio St.3d 22, 27, 734 N.E.2d 782, 788-89 (Ohio 2000)). As a result, when a written contract is integrated, "it is unreasonable as a matter of law to rely on parol representations or promises within the scope of the contract made prior to its execution." Id. at 612 (citing Bollinger, Inc. v. Mayerson, 116 Ohio App.3d 702, 712-13, 689 N.E.2d 62, 69 (Ct. App. Ohio 1996) (fraud); Harris v. Equilon Enters., L.L.C., 107 F. Supp. 2d 921, 936 (S.D. Ohio 2000) (promissory estoppel)). Even if, as the Court of Appeals noted in a case applying Tennessee law, "there is no rule that a merger clause makes reliance on oral representations unreasonable per se so as to necessarily defeat a fraudulent inducement or promissory fraud claim," Shah v. Racetrac Petroleum Co., 338 F.3d 557, 568 (6th Cir. 2003), on the facts alleged here, it would have been unreasonable as a matter of law for Plaintiffs to rely on parol representations within the scope of the lease made prior to its execution.

Here the lease at issue is an integrated contract.[1] To the extent that Mr. McGraw's statement was regarding a matter within the scope of the Lease, which both parties acknowledge it was, it was unreasonable for the Plaintiffs to rely on that statement. Accordingly, Plaintiffs have not made allegations that could support their new claims regarding the representations of Mr. McGraw. Further, to the extent that Mr. McGraw's statement about the Lease was "in-line with the plain and unambiguous language of paragraph 19 and the parties' intent," (doc. no. 40 at 4), such a

---

[1] The lease provides, "It is mutually agreed that this instrument contains and expresses all of the agreements and understandings of the parties in regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this agreement or imposed upon the parties or either of them. . . ." (Doc. 33-1 at ¶21.)

8

statement was not a misrepresentation but an accurate representation of the Lease.  Accordingly, whether Mr. McGraw's statement comports with the language of the Lease or contradicts it, Plaintiffs have failed to allege facts supporting claims for negligent or intentional misrepresentation, and any such amendment would be futile.  Plaintiffs have not demonstrated good cause to amend their complaint to add those two counts.

The last proposed additional claim is for respondeat superior.  However, that claim is only relevant if the Court permits Plaintiffs to add the claims for negligent and/or intentional misrepresentation.  As a result, there is no good cause to permit an amendment to add that claim.

Plaintiffs argue that they have good cause to add the two additional defendants because "[b]ased upon information recently obtained in discovery, it appears that Range Resources - Appalachia, LLC . . . is a necessary party to this lawsuit both because it has an interest in the Lease, and also because of its conduct in the original procurement of the Lease."  (Doc. No. 34-2 at page 4 of 10.)  Plaintiffs do not cite to the information "recently obtained in discovery" that supports their assertion that Range Resources has an interest in the Lease, so that assertion fails to demonstrate good cause.  Nor does Plaintiffs' reply brief address Defendant's assertion that there is no evidence showing that Range Resources has a continuing and current personal interest in the Lease. (Doc. No. 36 at 8; Doc. No. 40.)  Plaintiffs' other assertion really turns on whether they can add claims against the proposed new defendants for fraud or negligent misrepresentation or whether they can hold the proposed new defendants liable for the actions of other defendants as a result of respondeat superior.  For the reasons discussed above, Plaintiffs have failed to demonstrate good cause to amend the complaint to add those new claims against the

9

proposed new defendants.

In addition to the lack of good cause to permit the proposed amendments, the proposed amendments to add defendants and claims would certainly prejudice Defendant because the amendments would change the case from a declaratory judgment action against one defendant without any claim for damages to a case against multiple defendants raising claims in tort and contract, and seeking compensatory and punitive damages.  Discovery would have to be reopened and Defendant would need discovery regarding damages, new Defendants, and might potentially need new expert testimony to address damages.  In addition, the witnesses who have been deposed would likely have to be deposed again to address the new issues raised by the new claims.  Furthermore, there would likely be new dispositive motions briefed.  Plaintiffs argue that Defendant's late disclosure of the Acree Affidavit should weigh against any argument of prejudice, but in light of the Court's conclusion that the Acree Affidavit did not provide good cause for amending the complaint, that argument is without merit.  Accordingly, permitting the proposed amendment is likely to be very prejudicial to Defendant.

## IV.  Conclusion and Order

For the reasons set forth above, the Court denies in part and withholds judgment in part as to Plaintiffs' Renewed Motion for Leave to File Amended Complaint (#34).  The Court defers judgment on whether Plaintiffs may be permitted to withdraw the class action allegations until after further briefing is completed.  Within 21 days of the date of this Order, Plaintiffs are directed to file a brief addressing whether putative class members are likely to be prejudiced by the dismissal of the class action allegations.  See Doe v. Lexington-Fayette Urban Cnty. Gov't, 407 F.3d at 764.  Defendants may respond within 14 days thereafter.  The remainder of Plaintiffs' Renewed Motion for

Leave to File Amended Complaint is denied.

### V. Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge