IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM EASTHAM, et al.,

    Plaintiffs,

v.

CHESAPEAKE APPALACHIA, LLC,

    Defendant.

Case No. 2:12-cv-0615
JUDGE GREGORY L. FROST
Magistrate Judge Terence Kemp

## OPINION AND ORDER

This matter is before the Court on the following filings:

(1) Plaintiffs' motion for summary judgment (ECF No. 35), Defendant's response to Plaintiffs' motion (ECF No. 38), and Plaintiffs' reply to Defendant's opposition (ECF No. 41); and

(2) Defendant's motion for summary judgment (ECF No. 33), Plaintiffs' response in opposition to Defendant's motion (ECF No. 37), and Defendant's reply to Plaintiffs' response (ECF No. 39).

For the reasons set forth in more detail in this Opinion and Order, the Court **GRANTS** the Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

## I.

This case arises from a dispute over an oil and gas lease associated with property owned by Plaintiffs William and Frostie Eastham. Plaintiffs entered into an Oil, Gas, and Coalbed Methane Gas Lease (the "Lease") with Great Lakes Energy Partners, LLC ("Great Lakes") in April 2007. As consideration for the Lease, Plaintiffs received a bonus payment of $490.66 (ten

1

dollars per acre) and a 12.5 percent royalty interest on oil, gas, and/or coalbed methane gas extracted from the property and marketed. Great Lakes later assigned its interest in the Lease to Defendant Chesapeake Appalachia, LLC ("Chesapeake").

The dispute in this case centers on paragraph 19 of the Lease. Paragraph 19 states:

> In consideration of the acceptance of this lease by the Lessee, the Lessor agrees for himself and his heirs, successors and assigns, that no other lease for the minerals covered by this lease shall be granted by the Lessor during the term of this lease or any extension or renewal thereof granted to the Lessee herein. Upon the expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease.

(ECF No. 33-1 at PageID# 178.)

On March 14, 2012, a date 26 days before the expiration of the Lease term, Chesapeake executed and recorded a Notice of Extension of Oil and Gas Lease. With the Notice, Chesapeake purported to invoke Paragraph 19 and extend the Lease under identical terms. Chesapeake also notified Plaintiffs that it had elected to extend the Lease for an additional five-year period pursuant to Paragraph 19. Upon filing the Notice of Extension, Chesapeake sent a check to Plaintiffs for $490.66, an amount identical to the original bonus paid to Plaintiffs in 2007 at the outset of the Lease. Chesapeake did not negotiate the terms upon which the Lease would continue.

Plaintiffs filed this lawsuit in June 2012 in the Court of Common Pleas of Jefferson County, Ohio. Chesapeake, an Oklahoma limited liability company, removed the action to this Court, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF No. 1.) In the Amended Complaint before the Court, Plaintiffs seek a declaratory judgment that the "option language" in Paragraph 19 of the Lease is invalid and that the Lease expires at the close of the

five-year primary term. (Am. Compl. ¶ 21, ECF No. 53 at PageID# 597.)[1] Plaintiffs also seek a declaration under Ohio Rev. Code § 5301.01 quieting title to the oil and gas rights on their property. (*Id.* at ¶ 26.) For its part, Chesapeake instituted a counterclaim for declaratory judgment seeking, among other things, a declaration that Paragraph 19 of the Lease allows Chesapeake to extend the terms of the Lease for an additional term. Chesapeake's counterclaim also seeks a declaratory judgment that it validly extended the Lease under other clauses and/or under common law bases. (Counterclaim, ECF No. 7 at PageID# 57.)

The parties have filed cross motions for summary judgment on Plaintiffs' Complaint, each of them arguing for the Court to adopt their interpretation of Paragraph 19 of the Lease. The motions for summary judgment are fully briefed and the matter is ripe for this Court's adjudication.[2]

**II.**

Summary judgment under Fed. R. Civ. P. 56 is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See*

---

[1] Plaintiffs' original Complaint sought class action certification. (ECF No. 3 at PageID# 40-41.) With leave of Court, Plaintiffs amended their Complaint to remove all class action allegations. (ECF No. 52.) Plaintiffs filed their amended complaint after briefing on the motions for summary judgment was complete. (ECF No. 53.) By order of this Court and agreement of the parties, the Court deemed the parties' motions for summary judgment to be timely filed and applicable to the Amended Complaint. (ECF No. 55.) Accordingly, notwithstanding the filing of the Amended Complaint, the motions for summary judgment are ripe for this Court's adjudication.

[2] Neither party has moved for summary judgment on Chesapeake's counterclaim. (*See* Def.'s Mot. Summ. J., ECF No. 33 at PageID# 154 (moving for summary judgment "as to the Complaint of Plaintiffs William and Frostie Eastham"); *id.* at PageID# 173 (arguing Chesapeake's entitlement to summary judgment "as to the Easthams' claims for declaratory relief as well as their claims to quiet title and for slander of title, which are dependent upon a declaration that Paragraph 19 if void"); Pls.' Mot. Summ. J., ECF No. 35 at PageID# 269 (moving for summary judgment "as to their Complaint").)

*Muncie Power Prods., Inc. v. United Tech. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003)).  The central issue is whether the evidence presents a sufficient disagreement to require submission to a trier of fact or whether it is so one-sided that one party must prevail as a matter of law.  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52)).  In a contract dispute, summary judgment is appropriate when the contractual language is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits contract interpretation of the agreement as a matter of law.  *See Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. BVR Liquidating, Inc*., 190 F.3d 768, 772 (6th Cir. 1999).

**III.**

The primary issue contested between the parties is the interpretation of Paragraph 19 of the Lease.  Both sides argue that Paragraph 19 is clear and unambiguous; the rub is that they reach different conclusions as to what the language means.

Ohio law governs the matter before the Court.  When confronted with an issue of contract interpretation, a court's role is to effectuate the intent of the parties, which is presumed to reside in the language of the contract.  *Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E. 2d 285, at ¶ 37 (Ohio 2011).  When the language of a written contract is clear, the court's inquiry goes no further than to the writing itself when ascertaining the intent of

4

the parties. *Id.* "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11 (Ohio 2003).

In assessing the meaning of a contract, common words used in the agreement will be given their ordinary meaning unless to do so would be manifestly absurd or some other meaning is clearly evidenced from the content of the instrument. *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 54, 544 N.E. 2d 920 (Ohio 1989) (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 374 N.E. 2d 146 (Ohio 1978)). A court interpreting a contract must also give effect, if possible, to all of the words used; if one construction would make a particular term meaningless and it is possible to construe the term in such a way as to give it meaning and purpose, the latter must control. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362, 678 N.E. 2d 519 (Ohio 1997) (quoting *Farmers Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 94 N.E. 834 (Ohio 1911)).

### A. Defendant's Interpretation of Paragraph 19 of the Lease

Plaintiffs have taken the position that Chesapeake did not have a unilateral option to renew the Lease. Based on the language of Paragraph 19 of the Lease, Plaintiffs contend that Chesapeake was required to negotiate any extension or renewal of the original lease at the conclusion of the primary term. (Pls.' Mot. Summ. J., ECF No. 35 at PageID# 276-77.)

Chesapeake's primary argument is a plain language one. The final sentence of Paragraph 19 reads: "Upon the expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option to extend or renew under similar terms a like lease." Applying contract interpretation principles to this language, Chesapeake argues that Paragraph 19 unambiguously grants it an option to *either* (1) extend the original terms of the Lease upon

5

identical terms *or* (2) renew a "like lease" under "similar terms." (Def.'s Mot. Summ. J., ECF No. 33 at PageID# 164.)

Chesapeake's interpretation heeds the use of the disjunctive "or" in the final sentence of Paragraph 19. Chesapeake argues that the use of the word "or" means that the terms "extend" and "renew" in Paragraph 19 mean different things and that a contrary interpretation would mean that including both terms would be superfluous. (*Id.* at PageID# 165.) Thus, the plain language of Paragraph 19 means that Chesapeake had the option to either extend the lease under the same terms or to renew it under similar terms. This interpretation, argues Chesapeake, is faithful to the language used in Paragraph 19 and the custom and practice of the oil and gas industry.

### B. *Plaintiffs' Interpretation of Paragraph 19 of the Lease*

Plaintiffs argue that Paragraph 19's "plain and unambiguous language" grants to Chesapeake merely "a preferential right to acquire an extension/renewal of the Lease on the same terms and conditions the Lessor is willing to accept from a third party." (Pls.' Mot. Summ. J., ECF No. 35 at PageID# 278.) That is, Plaintiffs say Paragraph 19 gives Chesapeake the option to enter into a "like lease" under "similar terms," but *not* the same lease under identical terms. Thus, Plaintiffs argue that Chesapeake's extension of the Lease upon the identical terms of the original five-year Lease was inoperative.

In support of its interpretation, Plaintiffs analyze the structure of Paragraph 19's final sentence: "Upon the expiration of this lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option *to extend or renew under similar terms a like lease*." (Emphasis added.) Focusing on the emphasized language, Plaintiff argues that the terms "like lease" and "similar terms" modify *both* the verb "renew" and the verb "extend." This is the case, Plaintiffs argue, because the terms "extend" and "renew" are synonymous under Ohio law. Accordingly,

6

under "standard rules of grammar," Plaintiffs argue that "the structure of this sentence makes clear that the parties did not intend to create two separate options that the Lessee may exercise to maintain the leasehold, but rather one option to enter into 'a like lease' with 'similar terms.'" (ECF No. 35 at PageID# 279.)

Plaintiffs further argue that their interpretation "gives meaning to paragraph 19 as a whole." (Pls.' Reply, ECF NO. 41 at PageID# 494.)  Citing the "Upon expiration of this lease and within sixty days thereafter" language, Plaintiffs argue that the Lease had to first *expire* before they and Chesapeake could extend or renew it.  Since the contract requires the Lease to expire before the option being exercised, it could not have been the intent of the parties to have the initial Lease continue for the same consideration given five years earlier.  Rather, Paragraph 19 merely means that the Lessor could not enter into a new lease with a third party during that 60-day period, giving the Lessee a right of first refusal during that period.

### C. *Defendant Has The Better of the "Plain Language" Interpretations*

Upon consideration of the contract language and the parties' arguments, the Court has little trouble concluding that it is Chesapeake's interpretation that carries the day.  In reaching this conclusion, the Court finds persuasive the reasoning of the district court in a recent decision rendered in *Brown v. Chesapeake Appalachia, LLC*, No. 5:12-cv-71, 2013 U.S. Dist. LEXIS 118827 (N.D. W.Va. Aug. 21, 2013).  In *Brown*, the Court was faced with the identical issue that this Court must decide with respect to the proper interpretation of Paragraph 19 of the Lease. Like Plaintiffs in this case, the *Brown* plaintiff argued that Paragraph 19 did not grant to Chesapeake a right to "extend" the Lease at the end of the primary term.  Rather, the *Brown* plaintiff argued (like Plaintiffs in this case) that Paragraph 19 "simply granted a right to 'extend' a like lease with similar terms, or 'renew' a like lease with similar terms." *Id.*, 2013 U.S. Dist.

7

LEXIS 118827 at *8.  Thus, the *Brown* plaintiff, like Plaintiffs here, argued that the terms "like lease" and "similar terms" modify *both* the verb "renew" and the verb "extend," verbs that the plaintiff treated as synonymous.

Applying West Virginia contract law, the district court in *Brown* rejected the plaintiff's interpretation of Paragraph 19 in favor of Chesapeake's interpretation, which the court found to unambiguously grant Chesapeake "a single option to extend the Lease or to renew a like lease with similar terms." *Id.* at *9.  Even though this case involves application of Ohio law, the contract law of the two states is not markedly different.[3]  Thus, the result in *Brown* is highly persuasive to this Court's interpretation of the identical contract language.

Like the *Brown* court, this Court recognizes that Plaintiffs' reading of Paragraph 19 would require the Court to find that the terms "extend" and "renew" are synonymous in the context of the Lease.  The Court rejects this view, as such an interpretation "would render meaningless the use of both terms rather than one or the other exclusively, and would declare the use of both terms 'mere surplusage.'" *Brown* at *12 (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993)).  In interpreting a contract, however, this Court must view contract terms as meaningful and not "mere surplusage." *Lo-Med Prescription Servs. v. Eliza Jennings Group*, 2007-Ohio-2112, at ¶ 17 (Ohio Ct. App. May 3, 2007).  Accordingly, each of these terms must be given effect as intentionally included.  And when each term is

---

[3] The similarity between Ohio contract law and West Virginia contract law is reflected in this passage from *Brown*: "Under West Virginia contract law, when interpreting the terms of a contract, a court must first look to the four corners of the contract itself, and give all terms contained therein their normal and natural meaning.  In determining the meaning of the terms of a contract, the court must also consider the instrument as a whole. Further, it is a fundamental rule of contract interpretation that courts must give effect to every clause and term rather than leave a portion of the contract meaningless or reduced to mere surplusage.  When the court finds that the contractual language is plain and unambiguous on its face, it is charged with simply applying that language, rather than construing it. Accordingly, a contract is determined to be plain and unambiguous, no extrinsic evidence may be offered or considered to alter or define the terms therein." *Brown*, 2013 U.S. Dist. LEXIS 11827, at *10-11 (internal quotations and citations omitted).

afforded its plain and natural meaning, it becomes evident that they mean different things in the context of the Lease. As the *Brown* court explained, the dictionary definition of the term "extend" means "to cause to be longer" while " 'renew' is generally defined as 'to become new or as new' or 'to begin again.'" *Brown* at *13 (quoting Merriam-Webster Online Dictionary). Applying these definitions, the term "extend," as applied to the Lease, means simply to lengthen that which already exists; in contrast "renew" means to start again with something new. As argued by Chesapeake and as definitively construed by the *Brown* court, "[t]hese definitions strongly indicate that Paragraph 19 was intended to grant the defendant two options, a first which would allow it to simply lengthen the term of the Lease as it was signed in 2007, and a second which would allow the defendant to approach the plaintiff to alter the terms of the Lease, and to create a new 'like lease' with 'similar terms.'" *Id.*

To be sure, Plaintiffs have a rejoinder to this interpretation. Citing *Corvington v. Heppert*, 156 Ohio St. 411, 103 N.E. 2d 558 (Ohio 1952), Plaintiffs argue that Ohio law treats "extend" and "renew" as synonymous terms. *Corvington* involved a lease for a two-year period with what the Ohio Supreme Court described as "an option of renewal by the lessee for three additional years on the same terms." *Corvington*, 156 Ohio St. at 412. No mention was made of this lease when the owner sold the property containing the leasehold premises. Some three months after a new owner bought the premises, the lessee exercised his option to renew the lease for an additional three-year period. *Id.* at 413. At issue in the case was whether the lease constituted an encumbrance on the premises as to the new owner (Corvington), thereby permitting him to pursue an action for damages against the previous owner for a breach of warranty in her deed of conveyance. *Id.* at 414.

9

In deciding the case, the Ohio Supreme Court considered the effect of the renewal clause in the lease at issue. The court observed that some courts made a "a clear cut distinction between the words, 'extension' and 'renewal," employed in leases," holding that a covenant for extension operates of its own force to create an additional term under the original lease, but that a provision for renewal does not, it creating only an obligation to execute a new lease for the additional term." *Id.* In contrast, the "modern trend" of that time was to "make no distinction between the words, 'extension' and 'renewal,' where their meaning is not defined or explained, and treat them as synonymous, so that no matter which expression is used, the implication is nothing more than for an extension of the term without the necessity of a new lease." *Id.* Plaintiffs use this portion of *Corvington* as standing for the proposition that "extend" and "renew" mean the same thing as a matter of Ohio law.

Plaintiffs read far too much from *Corvington* than is warranted. *Corvington* treated a lease term containing an option to "renew" a lease as having the same effect as if the lease had contained an option to "extend." In either case, the terms of the original lease would continue. But the Court did not purport to hold that was the rule in all cases. Indeed, unlike with the Lease at issue in this case, the *Corvington* court did not have to interpret a lease that contained *both* the terms "renew" and "extend," separated by a disjunctive "or."[4] Moreover, contrary to what Plaintiffs want here—an interpretation that would require Chesapeake to negotiate new terms to "extend" or "renew" the Lease—the *Corvington* court effectively held that the term "renew" (when a "renewal" option was exercised) meant that the original lease would continue and that

---

[4] For similar reasons, Plaintiffs' citation to *L & H Realty Co. v. Oberholtz*, 65 Ohio App. 2d 279, 418 N.E. 2d 401 (Ohio Ct. App. 1979), for the broad proposition that "renew" and "extend" mean the same thing as a matter of law is also unpersuasive. While it is true that the *L & H Realty* court used the terms "renew" and "extend" interchangeably in its opinion, the court was not called upon to interpret a lease provision containing both "renew" and "extend" separated by a disjunctive "or," as in Paragraph 19 of the Lease in this case.

10

*no new lease* would have to be signed. *See Corvington*, 156 Ohio St. at 414. Accordingly, *Corvington* is of no help to Plaintiffs' interpretation of Paragraph 19.

The fact that the *Corvington* lease did not contain both terms "renew" and "extend" is a key distinguishing factor from the Lease at issue in this case. Plaintiffs' desired interpretation, which would have this Court treat "renew" and "extend" as synonymous, "reads meaning out of the use of the word 'or' between the two terms." *Brown* at *20. As a matter of Ohio contract law, this Court is bound to give effect to the words used in a contract. Thus, this Court must give effect to Paragraph 19's use of the disjunctive "or." Where the disjunctive "or" is used, it generally connotes an alternative between two or more different things. *See Pizza v. Sunset Fireworks Co.*, 25 Ohio St.3d 1, 4, 494 N.E. 2d 1115 (Ohio 1986). Accordingly, to read "extend" and "renew" to have the same meaning would mean that the Lease "would thus grant Chesapeake the right to 'renew under like terms a similar lease OR IN THE ALTERNATIVE, renew under like terms a similar lease.'" *Brown* at *21. As the *Brown* court observed, "[s]uch an interpretation not only violates the basic principles of contract interpretation, but produces a nonsensical result." *Id.*

As another basis for disputing Chesapeake's contract interpretation in favor of their own, Plaintiffs engage in a grammatical analysis of Paragraph 19. Armed with the expert report of Dwight McUmar, a middle school and high school English teacher who has taught grammar for 40 years, Plaintiffs argue that "[t]o interpret 'a like lease' to not be the direct object of the infinitive 'to extend' would leave that infinitive phrase without a direct object, which is grammatically improper." (Pls.' Mot., ECF No. 35 at PageID# 280; McUmar Expert Report ¶¶ 13-22, ECF No. 35-3 at PageID# 309-10.) Plaintiffs also argue that the "series-qualifier canon" counsels in favor of the phase "under similar terms" being interpreted to modify both "extend"

11

and "renew." (ECF No. 35 at PageID# 281.) The Court finds it unnecessary, however, to engage in the strict application of grammatical rules that Plaintiffs advocate. Because the Court finds that the meaning of Paragraph 19 is unambiguous based on the analysis above, resort to strict application of grammatical rules is unnecessary. *See Brown*, 2013 U.S. Dist. LEXIS at *21 n.5 (citing *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1371-72 (10th Cir. 2009)).[5]

Accordingly, the Court finds that the plain language of Paragraph 19 supports Chesapeake's interpretation of the Lease. The option granted by Paragraph 19 gives Chesapeake the option to *either* (1) extend the Lease on the same terms *or* (2) renew under similar terms a like lease. Thus, Chesapeake's extension of the Lease without renegotiating new terms with Plaintiffs did not run afoul of Paragraph 19. Plaintiffs' position to the contrary is not faithful to the unambiguous language of Paragraph 19 and is therefore invalid.

### D. Court Need Not Examine Extrinsic Evidence to Ascertain Meaning

As an alternative to its "plain language" argument, Plaintiffs contend that Paragraph 19 is ambiguous. If ambiguous, Plaintiffs argue that the contract must be construed in their favor. (Pls.' Mot., ECF No. 35 at PageID# 287.) Plaintiffs also argue that extrinsic evidence "overwhelmingly" favors their interpretation of the contract. (*Id.* at PageID# 284.)

The Court need not engage in the analysis of the principles underlying interpretation of "ambiguous" contract language. Because the Court has found that Paragraph 19 unambiguously grants Chesapeake the right to either (1) extend the Lease on the same terms or (2) renew the

---

[5] Because the Court need not resort to the strict application of grammatical rules to interpret Paragraph 19, McUmar's expert report can neither support summary judgment in Plaintiffs' favor nor create a genuine issue of material fact to defeat Chesapeake's motion for summary judgment. Though the Court need not rule squarely on the admissibility of McUmar's expert testimony, the Court notes that its admissibility is dubious at best. *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997) ("Absent any need to clarify or define terms of art, science, or trade, expert opinion to interpret contract language is inadmissible.") (quoting *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981)).

Lease under similar terms, any arguments with regard to the ambiguity of the term are moot. *See Brown*, 2013 U.S. Dist. LEXIS 118827 at *21 n.5.

### E. Condition Precedent to Exercise of Option

Even under the Court's interpretation of Paragraph 19 as set forth above, Plaintiffs argue that Chesapeake still cannot prevail because it failed to validly exercise its option. The first clause of Paragraph 19's final sentence states, "Upon expiration of the lease and within sixty (60) days thereinafter, Lessor grants to Lessee an option . . . ." Thus, according to Plaintiffs, Chesapeake could not exercise its option until the Lease expired. Because Chesapeake gave notice of its exercise of the option nearly a month *before* the Lease expired, Plaintiffs argue that Chesapeake has not strictly complied with a condition precedent of extending the Lease.

The Court is not persuaded by Plaintiffs' argument with regard to the condition precedent being satisfied. While Plaintiffs cite a case in which a Lessee exercised his option *too late* (*Ahmed v. Scott*, 65 Ohio App. 2d 271, 418 N.E. 2d 406 (Ohio Ct. App. 1979)) as a basis for concluding that condition precedent has not been satisfied, they have not cited a case in which a lessee's *early* exercise of an option was deemed to be the failure of a condition precedent. And cases from other jurisdictions have found that an option can be validly exercised even if exercised early. *See Goodyear Tire and Rubber Co. v. Kin Properties, Inc.*, 647 A.2d 478, 481 (N.J. Super. 1994).

Moreover, the Court is not convinced that the language cited by Plaintiffs is indicative of a true condition precedent that Chesapeake failed to satisfy. While a deadline for exercising the option to extend or renew the Lease, the same reasoning does not apply to an early exercise of the option. *See id.* Plaintiffs have not given any logical reason why Chesapeake's ability to exercise its option would have been limited to only the period between the Lease's expiration

13

and 60 days thereafter. Absent any logical reason for making Chesapeake wait until the Lease expired before formally exercising its option, the language of Paragraph 19 is just as easily construed as defining the time when Chesapeake's option expired (*i.e.*, 60 days after the expiration of the Lease term). In other words, the "Upon expiration of the Lease and within sixty (60) days thereinafter" phraseology simply describes the time when the option expires and is not designed to define a condition precedent at all.

The Court sees no reason why Chesapeake's option should be deemed invalidly exercised simply because it exercised it before the Lease's initial period expired. Accordingly, the Court rejects this argument as a basis for invalidating Chesapeake's extension of the Lease.

**IV.**

In addition to their interpretive arguments, Plaintiffs make several arguments as to why Paragraph 19 of the Lease is unenforceable if Chesapeake is allowed to extend it beyond the initial five-year term. Plaintiffs contend that Paragraph 19 is unconscionable "as Chesapeake seeks to apply it" and therefore unenforceable. (Pls.' Mot., ECF No. 35 at PageID# 292.) Plaintiffs also contend that Chesapeake's option is barred by the Ohio Statute of Frauds if Paragraph 19 is accorded Chesapeake's interpretation.

As an initial matter, the Court rejects Chesapeake's contention that the Court should disregard these theories as being unpleaded in Plaintiffs' Complaint. These theories do not constitute new *claims* raised in the Complaint; rather, they are theories of relief that are fairly encompassed by Plaintiffs' claims alleged in the Complaint. Plaintiffs' Complaint gives sufficient notice of their intent to seek a declaratory judgment that Paragraph 19 does not grant Chesapeake the option to extend the Lease. (Am. Compl. ¶ 21, ECF No. 53 at PageID# 597.) The Court finds Plaintiffs' pleading sufficient to give notice of the various theories Plaintiffs

argue for invaliding the option contained in Paragraph 19 of the Lease. Accordingly, the Court proceeds to address the merits of Plaintiffs' unconscionability and Statute of Frauds arguments.

### A. *Unconscionability*

Under Ohio law, a contract may be deemed unconscionable if (1) there was an absence of meaningful choice or understanding of the terms on the part of one party ("procedural unconscionability") *and* (2) the contract incorporated terms that were so unfair to one party that their enforcement would be unreasonable ("substantive unconscionability"). *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 121 (6th Cir. 2009) (citing *Collins v. Click Camera & Video, Inc.*, 86 Ohio App. 3d 826, 834, 621 N.E. 2d 1294 (Ohio Ct. App. 1993)).[6] "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E. 2d 12, at ¶ 33 (Ohio 2008). Whether a contract is unconscionable is an issue of law for the court. *Id.* at ¶ 34.

In this case, Plaintiffs have not shown either prong of unconscionability. As to procedural unconscionability, Plaintiffs emphasize the facts that (1) neither of them finished high school and have no background in business or in oil and gas leasing, (2) Mr. Eastham is illiterate and relied upon the leasing agent to explain the Lease's terms to him, (3) the Lease was a "contract of adhesion" because it was a standardized form lease, (4) the Lease was single-spaced

---

[6] Citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 860 (S.D. Ohio 2003), Plaintiffs recite that unconscionability can be shown by proving *either* procedural unconscionability *or* substantive unconscionability. (Pls.' Mot., ECF No. 35 at PageID# 292.) Though *Raasch* does say that, it is an incorrect statement of Ohio law. Indeed, each of the cases *Raasch* cites stands for the proposition that proof of unconscionability requires a showing of both procedural *and* substantive unconscionability. *See Lake Ridge Acad. v. Carney*, 66 Ohio St. 3d 376, 613 N.E.2d 183, 189 (Ohio 1993); *Jeffrey Mining Prods. v. Left Fork Mining Co.*, 143 Ohio App. 3d 708, 758 N.E.2d 1173, 1180-81 (Ohio Ct. App. 2001); *Cross v. Carnes*, 132 Ohio App. 3d 157, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998); *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App. 3d 75, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996).

and in small font, and (5) the extension clause "does not follow the form of typical clauses" for extensions and is "not written in clear language." (ECF No. 35 at PageID # 293.) But these factors do not make Plaintiffs' case. The Ohio Supreme Court has described what a party must show in order to establish procedural unconscionability:

> Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' "'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Click Camera*, 86 Ohio App.3d at 834, 621 N.E.2d 1294. "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

*Taylor Bldg. Corp.*, 117 Ohio St. 3d 352 at ¶ 43. Under the circumstances presented here, the Court cannot conclude that there was unconscionability in the bargaining process.

In support of their argument for procedural unconscionability, Plaintiffs make much of the fact that Mr. Eastham is illiterate and relied upon the leasing agent to explain what the terms of the Lease were. But there is no indication that Plaintiffs were denied the opportunity to have the Lease read to Mr. Eastham or that Plaintiffs were pressured into signing the Lease before they had an opportunity to review its contents. On the contrary, Mr. Eastham acknowledged at his deposition that it was his decision *not* to have someone read the Lease to him before he signed it and that he was not pressured into signing it.

As for Plaintiffs' argument that the Lease was a "contract of adhesion" because it was a "standardized form lease," the Court is not persuaded. Plaintiffs have pointed the Court to no

16

evidence that would suggest that Plaintiffs (or any other landowners signing similar leases) had no opportunity to reject Chesapeake's terms or negotiate their own. Plaintiffs simply ask the Court to conclude that, on its face, the Lease is an adhesion contract. But absent evidence to show that Plaintiffs could not, in fact, negotiate terms, the Court is unable to conclude that the Lease is a contract of adhesion.

Nor does the report of Plaintiffs' expert Chris Whinery support Plaintiffs' claim of procedural unconscionability. Whinery opined that the extension clause in Paragraph 19 does not follow the form of typical clauses providing for lease extensions, is not written in clear language, and is purposefully vague. (Whinery Report ¶¶ 11-20, ECF No. 35-4 at PageID# 316-18.) But these arguments ring hollow in view of Plaintiffs' admission that they did not read the Lease.

Finally, the Court is unable to conclude that there is procedural unconscionability based on the fact that Plaintiffs have not demonstrated how they were in a position of unequal bargaining strength; in other words, Plaintiffs fail to explain how they were the "weaker" party and Chesapeake the "stronger" one. Though Plaintiffs gloss over that premise, it is not clear from the record before the Court how Chesapeake (or any oil and gas lessee for that matter) can be seen to be the "stronger" party as opposed to the landowner. Landowners are under no obligation to lease their land to parties interested in drilling for oil and gas. And it appears from the parties' dispute in this case that Plaintiffs believe they can get a better deal as a lessor than the one they previously signed with Chesapeake. Thus, it appears that landowners are in a position of relative strength, not weakness, vis-à-vis potential oil and gas lessees. In this situation, the Court is unable to find any indicia of procedural unconscionability.

17

Nor can the Court find substantive unconscionability in this case. To establish this prong, Plaintiffs have to show that the contract terms themselves are commercially unreasonable. *Jeffrey Mining Prods.*, 143 Ohio App. 3d at 718.  Plaintiffs argue that it is commercially unreasonable for Chesapeake to be able to extend the initial five-year Lease—effectively resulting in a ten-year lease—for consideration that is equivalent to the market rate terms from 2007.  Because Plaintiffs claim that the market rate for royalties is higher now than it was at the time they entered into the Lease, the terms are substantively unconscionable.

The Court is not persuaded by Plaintiffs' argument.  The fact that market conditions changed and that Plaintiffs could receive more now than what they are entitled to under the Lease is not a reason to find Paragraph 19 substantively unconscionable.  Both parties assumed some contractual risk in 2007—if market conditions went the opposite way after 2007, Chesapeake might have been the party that considered the Lease a bad deal.  On the record before the Court, there is no basis upon which to conclude that the terms of the Lease are so commercially unreasonable so as to bring it within the realm of substantive unconscionability under Ohio law. The Court therefore rejects Plaintiffs' attempt to void Paragraph 19 based on the grounds of unconscionability.

### B.  *Statute of Frauds*

Plaintiffs also argues that Chesapeake's interpretation of Paragraph 19 renders it violative of the Ohio Statute of Frauds.  *See* Ohio Rev. Code § 1335.04.  The Ohio Statute of Frauds states in relevant part: "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

18

This argument need not detain this Court long.  Paragraph 19 is contained in a Lease that is signed by Plaintiffs.  The Court has already found above that Paragraph 19 unambiguously granted Chesapeake the right to exercise an option to extend the Lease for an additional five-year period on the same terms.  Accordingly, the Court does not find the Statute of Frauds to be a basis for invalidating Chesapeake's exercise of the option contained in Paragraph 19.

## V.

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment (ECF No. 33) and **DENIES** Plaintiffs' motion for summary judgment (ECF No. 35).  As neither side moved for summary judgment on Defendant's counterclaim for declaratory judgment, Defendant's counterclaim remains pending in this action.

**IT IS SO ORDERED**.

   /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE